JUDGE ROBERTSON
delivered tiie opinion oe the court.
This is ail action of ejectment. James Gay, as equitable joint-tenant with two others of a-tract of land on Ned Niver, took possession of it as early as the year 1812, and leased a portion of it to Jacob Martin, who made an improvement to the extent of about forty acres. While so occupied, Gay in 1818 sold to John Holmes “the Jacob Martin improvement” for fifty dollars, about its then value. Holmes entered and occupied that land of about forty acres until Ms death, in the year 1838; and devising it to bis wife for life, she lived on it until her death, in the year 1861.
In 1837 James Gay, claiming the entire tract of two thousand nine hundred and twenty-five acres granted to *49 himself and co-tenants, conveyed to his son John a portion of it adjoining the Jacob Martin improvement, and John in 1838 conveyed to Holmes’s widow seventy-five acres, including that improvement, and retained possession of the residue, which he continued to hold until forcibly, evicted in 1862 by Holmes’s heirs.
This suit, brought by John’s heirs to recover the possession from the heirs of Holmes, who jointly defended, resulted in a verdict and judgment in favor of plaintiffs, which this appeal seeks to reverse.
Holmes derived his only title from Gay, but before his death claimed the land now in controversy by alleged adverse possession; and the appellants, as his heirs, asserting the same claim and no other, deny that the appellees, as John D. Gay’s heirs, have any title whatever, either by possession or valid contract.
James Gay sold to John Holmes no more than the Martin improvement of about forty acres. The testimony preponderates in favor of that conclusion which is indisputably established by the following corroborating facts: first, if he bought more, there can be no other limit to its extent than the patent boundary of two thousand nine hundred and twenty-five acres; second, that hypothesis involves the absurdity of styling so large a tract “Jacob Martin’s improvement” without any more definite designation as to boundary or quantity, and the still greater absurdity of a sale of two thousand nine hundred and twenty-five acres for fifty dollars when the proof shows that, a small fraction of that quantity was then worth that much; and third, in the year 1831 John Holmes, for the first and only time, attempted some extension of that improvement by laying the worm of a fence within the boundary afterward conveyed to John D. Gay, 'and said that he did this only to hold the land *50 by possession, implying that he had no other hope or claim.
In the year 1881 James Gay had obtained a commissioner’s deed for the whole of the land covered by the patent; and whether there was any valid judgment authorizing that conveyance has been elaborately discussed in this court. But we need not decide that question, because, as we will proceed to show, continued and exclusive possession from 1812 to 1862 gave to the appellees a possessoi’y title if not a fee.
John Holmes never by actual inclosure acquired even a constructive possession beyond the limits of the Martin improvement; and had he ever done so, his extended possession under pretense of an equitable right under Gay, to whom he looked for the legal title, would not have been constructively adverse to his right.
Then James Gay was actually possessed of the land which he conveyed to John I). Gay; and consequently, no other person being then in adverse possession of it, that conveyance could not have been on that ground, as argued, cliampertous. But, had it even been void for champerty, it shows the boundary to the extent of which J. D. Gay’s actual possession ever since, until the eviction in 1862, has been actually held, and which made the eviction tortious, and' sustains this action for restitution.
John D. Gay never held under or acquired any possession from the widow of John Holmes; and his possession could therefore never have been constructively for or under the appellants, but was always adverse to them. This is all so clear as to have made it the duty of the circuit court to set aside the verdict had it been for the appellants. And this conclusion supersedes the necessity of analyzing the various instructions given and overruled by the court on the trial. But we will barely say that, properly *51 considering tbe law and tbe decisive facts, we perceive no substantial error to tbe prejudice of tbe appellants in tbe rulings of tbe circuit judge. • ^
Tbe deed to J. N. Gay clefiiies tbe boundary of tbe land in controversy, and sufficiently certifies tbe verdict and judgment for satisfactory execution without hazard of injustice. Tbe boundary and not tbe quantity controls tbe recovery. And as tbe appellants made themselves joint-defendants, and jointly answered and claimed tbe land, tbe joint-judgment against them was proper.
Judgment affirmed
(Judge .Peters not sitting).